IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**TIMOTHY J. JOHNSON**                                                                                **PLAINTIFF**

**V.**                                   **NO. 4:20CV00743 BRW-JTK**

**COMMISSIONER OF**
**SOCIAL SECURITY ADMINISTRATION**                                  **DEFENDANT**

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Wilson can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I. Introduction:**

Plaintiff, Timothy J. Johnson ("Johnson"), applied for disability benefits on April 11, 2017, alleging a disability onset date of February 7, 2017.[1] (Tr. at 15). After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application on August 14, 2019. (Tr. at 23). The Appeals Council denied his request for review on April 27, 2020. (Tr. at 1). Therefore, the ALJ's decision now stands as the final decision of the Commissioner. Johnson has requested judicial

---

[1] Johnson also filed an application for disability benefits on June 23, 2020, subsequent to the Appeals Council's decision denying review of Johnson's claim. Doc. No. 18 at 1-3. On October 6, 2020, based on new medical evidence (which arose out of a rollover crash Johnson had during the relevant time-period), the Administration determined that Johnson was disabled as of August 15, 2019, the day after the ALJ issued his denial in the instant case. *Id*.

review.

For the reasons stated below, this Court should reverse the ALJ's decision denying benefits.

## II. **The Commissioner's Decision:**

The ALJ found that Johnson had not engaged in substantial gainful activity since the amended alleged onset date of February 7, 2017.[2] (Tr. at 17). At Step Two, the ALJ found that Johnson had the following severe impairments: spine disorder and osteoarthritis of the knees, bilaterally. *Id.*

After finding that Johnson's impairments did not meet or equal a listed impairment, the ALJ determined that Johnson had the residual functional capacity ("RFC") to perform work at the medium exertional level. (Tr. at 18).

The ALJ determined that Johnson is capable of performing past relevant work as a construction inspector (performed at the light exertional level), excavator (performed at the light exertional level), and carpenter supervisor (performed at the medium exertional level). (Tr. at 22-23). Therefore, the ALJ found that Johnson was not disabled. *Id*.

## III. **Discussion:**

A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion,

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work23; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

"substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B.  Johnson's Arguments on Appeal

Johnson argues that substantial evidence does not support the ALJ's decision to deny benefits. He contends that: (1) the ALJ failed to fully develop the record; (2) the ALJ did not properly analyze or discuss Johnson's subjective complaints; and (3) the RFC did not incorporate all of Johnson's limitations. The Court finds these arguments persuasive.

The medical record is thin, but it evidences that Johnson was involved in a rollover crash

on September 1, 2017; he fractured his C1 and L1 vertebrae. (Tr. at 423, 437, 447). His doctors prescribed Tramadol and Hydrocodone, and sent him to occupational therapy. (Tr. at 520, 549). Johnson was also prescribed an Aspen cervical brace, and he saw a trauma surgery expert. (Tr. at 423-484, 527). Dr. Kate McCarthy, M.D., at Arkansas Specialty Orthopaedics, and Dr. McCarthy's attending APRN, Alicia Bell, also saw Johnson. (Tr. at 519-524).

The medical evidence is mixed. Clinic examination showed normal gait, negative straight leg raises, and minimal tenderness. (Tr. at 20-21, 425-455, 520-540). Johnson told his doctors that pain medication helped. (Tr. at 519-529). However, he told the ALJ at the hearing that his pain was constant, interfered with sleep, and prevented him from performing almost all daily activities. (Tr. at 34-38). He said he felt very groggy after taking Tramadol and could not function during the day because of it. *Id*.

APRN Bell examined Johnson on November 20, 2017. (Tr. at 520-522). She did not put him through aggressive range of motion exercises. *Id*. He described his pain as aching and burning, aggravated by bending, lifting, standing, twisting, and walking. *Id*. Ms. Bell put a restriction on Johnson: she told him to avoid bending, twisting, lifting, and hyperextending his neck. *Id*.

Johnson told his doctors that his pain was at a 7-8 level on a scale of 1-10, and that walking made his pain worse. (Tr. at 526, 550-562).

In July 2018, Johnson's PCP noted that occupational therapy helped him but that he had lumbosacral tenderness and had trouble getting out of a chair. (Tr. at 553). His gait was careful, slow, and deliberate. *Id*. The PCP prescribed Tramadol and Ibuprofen. *Id*.

Lucy Sauer, M.D., an Administration doctor, reviewed the medical records; on November 28, 2017, she issued an opinion that Johnson could perform medium work. (Tr. at 97-98). She

4

stated that this RFC was effective through August 31, 2018, a full twelve months beyond the date of Johnson's rollover crash. *Id*. It is not clear why she said that.

Johnson filled out two function reports. He said in the first function report, dated April 22, 2017 (before the rollover crash), that he could lift up to 50 pounds, do some housework, do yardwork, ride his horse, prepare simple meals, and go out to eat. (Tr. at 205-212). The ALJ cited to this report in finding that Johnson's subjective complaints were not persuasive. (Tr. at 18-19). However, Johnson filled out a second function report on October 30, 2017, *after* the rollover crash that broke two vertebrae. (Tr. at 248-257). He said at that time, that pain and side effects from medication prevented virtually all daily activities; his family helped take care of him, and he had difficulty with personal care. *Id*. He said that he uses a cane or wheelchair and wears a neck and back brace. *Id*. Physical activity aggravated his pain. *Id*.

Johnson asserts that the ALJ did not fully consider, and mischaracterized, his subjective complaints. When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). An ALJ need not explicitly discuss each factor, and he may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony. *Id*. Still, an ALJ must explain his reasons for discounting a claimant's subjective complaints.

In finding Johnson's subjective complaints of pain to be inconsistent with the record, the ALJ cited to only one function report. . . the one from *before* Johnson's rollover wreck. (Tr. at 18-

10). It is unclear if the ALJ read or considered the second function report. The second function report was consistent with both Johnson's hearing testimony and that of his mother, a nurse practitioner, who observed his constant. (Tr. at 56-60). It was also consistent with the doctors' notes about the nature of Johnson's pain. It is true that clinical examinations showed mostly normal function and some improvement with treatment; however, in this case, there was other evidence backing up Johnson's complaints of pain. In this scenario, the ALJ could have at least ordered a consultative examination to resolve any discrepancy. The only medical opinion was from a non-examining Administration medical expert, and it conflicted with more recent medical evidence. Certainly, a consultative examination after the rollover crash would have been appropriate, but the ALJ did not order one.

The ALJ also erred by not mentioning the side effects of Tramadol, and by not discussing the examination by APRN bell, wherein she placed restrictions on Johnson based on his rollover crash injuries. The ALJ failed to "show his work" with respect to his analysis of subjective complaints. *See Smajic v. Berryhill*, 2019 U.S. Dist. LEXIS 6240 *11-12 (W.D. Mo. Jan. 14, 2019)(error where ALJ failed to show his work); *Cain v. Saul*, 2020 U.S. Dist. LEXIS 86009 at *7 (W.D. Ark. May 12, 2020 (ALJ's failure to fairly consider claimant's subjective complaints required reversal).

**IV. Conclusion:**

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ failed to properly analyze and discuss Johnson's subjective complaints.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further administrative review.

DATED this 16th day of July, 2021.

_____
UNITED STATES MAGISTRATE JUDGE